PATRICK R. ADAMS,

Plaintiff,

VERSUS

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY

Defendant.

————————

MEMORANDUM AND ORDER
March 9, 2012

————————

JOSEPH F. BIANCO, District Judge:

*Pro se* plaintiff, Patrick R. Adams, (hereinafter "plaintiff") brings this action, pursuant to 42 U.S.C. § 405(g) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security, dated February 26, 2009, denying plaintiff's request for waiver of an alleged overpayment of disability insurance benefits under Title II of the Act. Specifically, the Commissioner found that plaintiff had received an overpayment of disability insurance benefits totaling $4,977.60 and that the recovery of the overpayment should not be waived.

Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.[1] For the reasons set forth below, the Court grants defendant's motion for judgment on the pleadings and affirms the decision of the Administrative Law Judge ("ALJ"). Plaintiff's cross-motion is denied.

I. BACKGROUND

A. Facts

The following summary of facts is based upon the administrative record as developed by the ALJ. A more exhaustive recitation of the facts is contained in the parties' submissions to the Court and is not repeated herein.

---

[1] Although plaintiff characterizes his filing as a "Response to the Defendant's Memorandum of Law," the Court liberally construes it as a cross-motion for judgment on the pleadings.

Plaintiff was found to be disabled beginning October 1, 1993, based on organic mental disorder, depression, and a personality disorder. (AR[2] 128.) In December 1998, the SSA found that plaintiff's disability had ceased. (AR 13, 128.) Later, plaintiff requested reinstatement of benefits. (AR 13.) The Social Security Administration ("SSA") informed plaintiff, by letter dated January 25, 2003, that plaintiff could be provisionally paid up to six months of benefits pending approval of his application for reinstatement. (AR 13, 115-17.) The letter advised plaintiff that if the SSA denied him benefits, he would have to repay the benefits he received. (AR 14, 115-17.) The record does not reflect any further communications with the plaintiff until April 7, 2003, when the SSA informed plaintiff that he had not been approved, but that he was entitled to a personal conference relating to whether or not an overpayment of $11,035.50 could be waived. (AR 14, 118-19.) On July 1, 2003, plaintiff was advised that his provisional benefits had ceased, and on December 1, 2003, the SSA provided plaintiff with a repayment schedule. (AR 14, 120-22.) In a decision dated February 4, 2004, ALJ Joseph R. Faraguna determined that plaintiff was entitled to a waiver of the overpayment because plaintiff was without fault for the overpayment and because recovery of the overpayment would defeat the purpose of the Act. (AR 127-29.) ALJ Faraguna's February 4, 2004 decision is not before the Court.

On April 24, 2004, the SSA informed plaintiff that his next check would be for $1,330.00, representing the benefits due to plaintiff through April 2004, and that he would receive $1,330.00 each month thereafter.[3] (AR 132.) On May 7, 2005, the SSA informed plaintiff that he would receive $6,118 because of a rate increase. (AR 14, 136.)

In a Notice of Planned Action dated December 6, 2005, the SSA advised plaintiff that it learned he had been imprisoned since September 2005 after being convicted of a crime. (AR 21-22.) Accordingly, the SSA informed plaintiff that it should have stopped his benefits beginning in September 2005. (AR 21.) The notice stated that if plaintiff did not respond to the SSA within ten days, the SSA would assume that the information was correct and stop his Social Security benefits. (*Id.*) The SSA, after receiving no communication from plaintiff, informed plaintiff by notice dated December 28, 2005 that plaintiff was not entitled to benefits as of September 2005 because he was "imprisoned for the conviction of a crime." (AR 138.) Plaintiff had been overpaid $4,977.60 in benefits for payment received from September 2005 through December 2005. (AR 138-41.) The notice informed plaintiff of his right to appeal and ability to request waiver of the overpayment. (AR 139.) On February 15, 2006, the SSA informed plaintiff that payment of the overpayment was due by March 3, 2006. (AR 142-44.)

Plaintiff sent a letter, dated July 12, 2006, to the SSA explaining that if there was any overpayment, he was not at fault. (AR 24.) In the letter, plaintiff stated that he was incarcerated, indigent, and could not repay the overpayment. (*Id.*) On July 31, 2006, plaintiff completed a "Request for Waiver of Overpayment Recovery or Change in Repayment Rate" form. (AR 25-31.) Plaintiff again stated that he was indigent and not at fault for the overpayment. (*Id.*) He explained

---

[2] "AR" refers to the administrative record filed on appeal.

[3] The record does not reflect whether, or when, plaintiff reapplied for benefits, or how the SSA determined that he would receive these monthly sums.

that he did not believe he was at fault because, "although [he] was incarcerated, [he] was given to believe every reason by the court that [he] would be released in a short period of time, which obviously did not eventuate." (AR 26.) He explained that he did not tell the SSA about his incarceration because he "had no reasonable way to communicate" with the SSA, and that the court did not lead him to believe it was necessary to do so. (*Id.*)

On August 10, 2007, plaintiff was released from prison, and his benefits were resumed effective September 2007. (AR 32-33.) The SSA mailed the first check in October 2007. (AR 33.) By notice dated October 11, 2007, the SSA informed plaintiff that the checks would contain a monthly deduction of $100 as payment for the $4,977.60 overpayment. (AR 39-40.) On October 4, 18, and 23, 2007, plaintiff wrote to the SSA and questioned why the deductions were being taken from his benefit payments, in light of the fact that plaintiff had submitted a waiver request in August 2006 and had not received a response to that request. (AR 36, 42, 46.)

By letter dated October 24, 2007, the SSA informed plaintiff that it considered his October 4, 2007 letter to be an informal waiver request, and would therefore stop recovery action until plaintiff submitted a Request for Waiver Form SSA632. (AR 47.) Plaintiff filed a request for reconsideration on November 8, 2007. (AR 50-51.) On December 5, 2007, plaintiff resubmitted his Request for Waiver form, which he had originally completed on July 31, 2006. (AR 62-69.) Plaintiff noted in the Remarks Space: "I request the Social Security Administration to process my original waiver request using the information provided. I do not want to update my financial information or any other personal information." (AR 69.) The SSA denied plaintiff's request for a waiver on December 6, 2007.[4] (AR 57-59.)

On or about December 10, 2007, plaintiff requested a hearing. (AR 60.) He appeared before ALJ Seymour Rayner on January 15, 2009. (AR 156-78.) Plaintiff testified that he was 56 years old and has a Master's Degree in Public Administration. (AR 163.) He said he was incarcerated from September 2005 until August 2007, and while he was in prison, he did not receive any disability checks. (AR 164-66.) Although the checks were mailed to his house, plaintiff alleged that no one he knew cashed them. (AR 166.) As of May 2008, plaintiff had been working as a contract administrator for Metro-North Railroad earning approximately $800 per week. (AR 165-66.)

The ALJ determined that plaintiff was not without fault in accepting the overpayment of $4,977.60 for the period of September to November 2005, and that repayment of the overpayment would not be against equity and good conscience. (AR 10-17.) The Appeals Council denied plaintiff's request for review on December 2, 2010, making the ALJ's February 26, 2009 decision final. (AR 5-8.)[5]

---

[4] The letter noted that the overpayment was for the amount of $4,884.60. (AR 57.) The record does not reflect why that figure differs from the $4,977.60 figure.

[5] Plaintiff received a letter dated February 13, 2008 stating that plaintiff received $7,814.00 more in benefits than he was due, and that refund of the overpayment was due within 30 days. (AR 151.) On February 26, 2009, ALJ Rayner found that there was no supportive evidence in the file regarding how the $7,814.00 overpayment was determined or the basis of the overpayment. (AR 15.) Accordingly, the ALJ referred the matter to the District Office for a detailed explanation of how it was determined. (*Id.*) That portion of the ALJ's decision is not currently before the Court.

Additionally, plaintiff filed a motion to introduce new evidence on February 13, 2012. The Court has

3

B. Procedural History

Plaintiff filed this action on January 18, 2011. The parties bundled their motion papers, which included defendant's motion for judgment on the pleadings and plaintiff's opposition, and filed them on July 11, 2011. The Court has carefully considered the parties' arguments.

II. DISCUSSION

A. Standard of Review

A district court may only set aside a determination by an ALJ that is based upon legal error or that is unsupported by substantial evidence. *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998) (citing *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982)). The Supreme Court has defined "substantial evidence" in Social Security cases as "'more than a mere scintilla'" and that which "'a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Quinones v. Chater*, 117 F.3d 29, 33 (2d Cir. 1997) (adopting the Supreme Court's definition in *Richardson* of "substantial evidence"). Furthermore, "it is up to the agency, and not th[e] court, to weigh the conflicting evidence in the record." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). If the court finds that there is substantial evidence to support the Commissioner's determination, the decision must be upheld, even if there is substantial evidence for the plaintiff's position. *See, e.g.*, *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998); *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey*, 145 F.3d at 111; *see also Jones*, 949 F.2d at 59 ("'[T]he court may not substitute its own judgment for that of the Secretary, even if it might justifiably have reached a different result upon a *de novo* review.'" (quoting *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984))).

B. Legal Standard for Waiver of Overpayments

Pursuant to 42 U.S.C. § 404(a)(1), whenever the Commissioner finds that an overpayment of benefits has been made to an individual, the Commissioner must recover the amount of the overpayment by decreasing a payment due to such individual or requiring a refund of the overpayment. *See id.* However, the Commissioner must waive the repayment of the overpaid benefits if (1) the recipient of the overpayment was "without fault," and (2) recovery would defeat the purpose of Title II of the Social Security Act

---

reviewed the "evidence" submitted by plaintiff. However, that evidence is irrelevant to the narrower legal issue that is the subject of this decision. In particular, plaintiff brought this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner finding that plaintiff was not without fault in accepting an overpayment of Title II benefits in the amount of $4,977.60 while incarcerated, and thus, the overpayment could not be waived. Court review under 42 U.S.C. § 405(g) is based upon the certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based, which defendant filed as part of his answer on April 18, 2011. The evidence proffered by plaintiff with his motion is a notice dated February 8, 2012, which has no bearing on the facts of this case.

Similarly, the Court received a copy of a letter, dated February 14, 2012, from plaintiff to the SSA, challenging their decision, dated February 3, 2012, ceasing disability payments due to ineligibility as of February 2012. Plaintiff attaches that decision. Again, that decision is not the subject of the instant lawsuit and record before the Court. Any challenge to that decision must be the subject of a separate action.

4

or be against equity and good conscience. *See id.* § 404(b); 20 C.F.R. § 404.506(a).

Under the applicable regulations, an individual will be found to be at fault in connection with the overpayment if the overpayment resulted from one of the following: (a) "[a]n incorrect statement made by the individual which he knew or should have known to be incorrect"; or (b) "[f]ailure to furnish information which he knew or should have known to be material"; or (c) "acceptance of a payment which he either knew or could have been expected to know was incorrect." 20 C.F.R. § 404.507. In determining whether an individual is at fault, the SSA must "consider all pertinent circumstances" which include "the individual's age and intelligence, and any physical, mental, educational, or linguistic limitations (including any lack of facility with the English language) the individual has." *Id.* The Second Circuit has made clear that it has "interpreted this rule [*i.e.*, 20 C.F.R. § 404.507] liberally, making it relatively easy for the Secretary to recover an overpayment: 'No showing of bad faith is required; rather, an honest mistake [by the individual] may be sufficient to constitute fault.'" *Barone v. Bowen*, 869 F.2d 49, 51 (2d Cir. 1989) (quoting *Center v. Schweiker*, 704 F.2d 678, 680 (2d Cir. 1983)).

With respect to the proper procedure for determining fault, the Second Circuit has made clear, relying on Supreme Court precedent, that "where a claimant's 'fault' in receiving overpayments is in issue, recoupment must be preceded by a hearing, since findings of 'fault' require credibility evaluations which can only be properly considered at an oral hearing." *Dorman v. Harris*, 633 F.2d 1035, 1038 n.2 (2d Cir. 1980) (internal citation omitted) (citing *Califano v. Yamasaki*, 442 U.S. 682 (1979)).

The rationale for this rule was clearly articulated by the Supreme Court in *Califano*:

> As the Secretary's regulations make clear, "fault" depends on an evaluation of "all pertinent circumstances" including the recipient's "intelligence . . . and physical and mental condition" as well as his good faith. We do not see how these can be evaluated absent personal contact between the recipient and the person who decides his case. Evaluating fault, like judging detrimental reliance, usually requires an assessment of the recipient's credibility, and written submissions are a particularly inappropriate way to distinguish a genuine hard luck story from a fabricated tall tale.

*Califano*, 442 U.S. at 696-97 (citation omitted); *accord Schwingel v. Harris*, 631 F.2d 192, 196 (2d Cir. 1980); *see also Jefferson v. Bowen*, 794 F.2d 631, 633 (11th Cir. 1986) ("'The decision which must be reached in a fault determination is highly subjective, highly dependent on the interaction between the intentions and state of mind of the claimant and the peculiar circumstances of his situation.'" (quoting *Harrison v. Heckler*, 746 F.2d 480, 482 (9th Cir. 1984))).

Even if the recipient can demonstrate that he is without fault, he is still responsible for the overpayment unless he can also demonstrate that the recovery by the Commissioner would defeat the purpose of Title II of the Act or would be against equity and good conscience. 20 C.F.R. §§ 404.508-09; *accord Valente*, 733 F.2d at 1042 ("Assuming that the recipient can show that he is without fault, the statutory standard places the burden on him to show also that

5

repayment would either be inequitable or would defeat the purposes of the Act."). However, these additional factors need only be considered if the first requirement is satisfied – namely, that the recipient is without fault. *See Chlieb v. Heckler*, 777 F.2d 842, 846 (2d Cir. 1985) ("we need not consider whether recovery of the overpayments would defeat the purpose of Title II or would be against equity and good conscience, since those factors come into play only if the recipient is without fault").

Recovery of an overpayment would defeat the purpose of Title II of the Act if such recovery would "deprive a person of income required for ordinary and necessary living expenses." 20 C.F.R. § 404.508(a). The analysis under this standard "depends upon whether the person has an income or financial resources sufficient for more than ordinary and necessary needs, or is dependent upon all of his current benefits for such needs." *Id.* Pursuant to the applicable regulation, ordinary and necessary expenses include fixed living expenses, such as food, clothing, rent, mortgage payments, utilities, maintenance, insurance, taxes and installment payments. *Id.* § 404.508(a)(1). Other ordinary and necessary expenses include medical bills, hospitalizations, expenses for the support of others for whom the individual is legally responsible, and other miscellaneous expenses which may reasonably be considered as part of the individual's standard of living. *Id.* § 404.508(a)(2)-(4). The applicable regulation also makes clear that "[a]djustment or recovery will defeat the purposes of title II in (but is not limited to) situations where the person from whom recovery is sought needs substantially all of his current income (including social security monthly benefits) to meet current ordinary and necessary living expenses." *Id.* § 404.508(b).

Recovery of an overpayment can be "against equity and good conscience" where an individual demonstrates that he "[c]hanged his or her position for the worse" or "relinquished a valuable right . . . because of reliance upon a notice that a payment would be made or because of the overpayment itself." *Id.* § 404.509(a)(1). The applicable regulation notes that "[t]he individual's financial circumstances are not material to a finding of against equity or good conscience" and gives examples of how this standard can be satisfied. *Id.* § 404.509(b).

Finally, the regulations specifically provide that, where a claimant accepts an overpayment because of or reliance on erroneous information from an official source within the SSA with respect to, among other things, an interpretation of the Act or its regulations, such an individual is deemed to have accepted the overpayment "without fault" and the recovery of such overpayment is waived because it is also deemed, under such circumstances, to be "against equity and good conscience." *Id.* §§ 404.510a and 404.512.[6]

---

[6] 20 C.F.R. § 404.510a provides as follows: "A benefit payment under title II or title XVIII of the Act to or on behalf of an individual who fails to meet one or more requirements for entitlement to such payment or a benefit payment exceeding the amount to which he is entitled, constitutes an entitlement overpayment. Where an individual or other person on behalf of an individual accepts such overpayment because of reliance on erroneous information from an official source within the Social Security Administration (or other governmental agency which the individual had reasonable cause to believe was connected with the administration of benefits under title II or title XVIII of the Act) with respect to the interpretation of a pertinent provision of the Social Security Act or regulations pertaining thereto, or where an individual or other person on behalf of an individual is overpaid as a result of the adjustment upward (under the family maximum provision in section 203 of the Act) of the benefits of such individual at the time of the proper termination of one or more beneficiaries on the same social security record and the subsequent reduction of the benefits of

6

The Second Circuit has explained how district courts should review whether the above-referenced factors for waiver of overpayments have been satisfied in light of the general legal framework for review of decisions by the Commissioner:

> The Secretary's determination of whether these factors have been satisfied may not lightly be overturned. First, the district court must uphold a decision by the Secretary that a claimant was not without fault if it is supported by substantial evidence in the record as a whole, because that determination is factual in nature. Further the issues of whether repayment would defeat the purposes of the Act or be against equity or good conscience implicate an exercise of informed judgment, and the Secretary has considerable discretion in making these determinations. Factual determinations by the Secretary in relation to these issues must be upheld if supported by substantial evidence, . . . and the Secretary's exercise of her judgment on the basis of such factual determinations is entitled to considerable deference. The court may not substitute its own judgment for that of the Secretary, even if it might justifiably have reached a different result upon a de novo review.

*Valente*, 733 F.2d at 1041 (citations omitted).

### C. Application

As discussed in detail below, after carefully reviewing the administrative record in this case, the Court concludes that there is substantial evidence to support the determinations of the ALJ that (1) plaintiff was not "without fault" in causing and accepting the overpayment and (2) recovery of the overpayment would not be against equity and good conscience.[7] Accordingly, judgment on the pleadings in favor of defendant is warranted.

### 1. Substantial Evidence Supported the Determination that Plaintiff Was At Fault

The reason provided by the ALJ to support his determination that plaintiff was not without fault in connection with the overpayment – namely, that plaintiff "knew he was in jail and kept the payments anyway" – was supported by substantial evidence. (AR 15.)

The Act prohibits the payment of monthly benefits to individuals incarcerated pursuant to a conviction for a criminal offense.[8] The

---

such individual caused by the reentitlement of the terminated beneficiary(ies) pursuant to a change in a provision of the law, such individual, in accepting such overpayment, will be deemed to be "without fault." For purposes of this section "governmental agency" includes intermediaries and carriers under contract pursuant to sections 1816 and 1842 of the Act." *Id.*

In addition, 20 C.F.R. § 404.512 provides, in relevant part, as follows: "Adjustment or recovery deemed 'against equity and good conscience.' In the situations described in §§ 404.510(a), (b), and (c), and 404.510a, adjustment or recovery will be waived since it will be deemed such adjustment or recovery is against equity and good conscience." *Id.*

[7] As discussed *infra* n.9, the ALJ did not make any findings as to whether recovery of the overpayment would defeat the purpose of Title II. Nonetheless, the Court finds that there is substantial evidence to support a determination that recovery of the overpayment would not defeat the purpose of Title II.

[8] The Social Security Act provides in relevant part:

> (1)(A) Notwithstanding any other provision of this title [42 U.S.C. §§ 401 *et seq.*], no monthly benefits shall be paid under this section or under section 223 [42 U.S.C. § 423] to any individual for any month ending

SSA erroneously sent plaintiff benefit checks while he was incarcerated, and those checks were cashed.

The ALJ cited 20 C.F.R. § 404.507, which provides that "[w]hat constitutes fault . . . depends upon whether the facts show that the incorrect payment to the individual . . . resulted from:

> (a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or
>
> (b) Failure to furnish information which he knew or should have known to be material; or
>
> (c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect."

*Id.* The ALJ held that the plaintiff "knew he was in jail and kept the payments anyway." (AR 15.)

Although plaintiff claimed that "nobody that I know of . . . cashed any checks," he did not allege that the checks were returned to the Department of the Treasury. (AR 166.) The ALJ did not find the plaintiff's statement that he never received the money to be credible.

---

> with or during or beginning with or during a period of more than 30 days throughout all of which such individual –
> (i) is confined in a jail, prison, or other penal institution or correctional facility pursuant to his conviction of a criminal offense

42 U.S.C. § 402(x); *see* 20 C.F.R. § 404.468 ("No monthly benefits will be paid to any individual for any month any part of which the individual is confined in a jail, prison, or other penal institution or correctional facility for conviction of a felony.").

(AR 15.) The ALJ noted, for example, that in all of plaintiff's correspondence with the payment center, including when he requested the overpayment waiver, plaintiff never raised the claim that he had not received the benefit checks. (*Id.*) Moreover, the ALJ found plaintiff's testimony that he could not contact the district office while he was in prison incredible, since plaintiff had managed to compose a letter to the SSA and complete a waiver of overpayment form while he was in jail. (AR 15, 24-31.)

Substantial evidence supports the ALJ's decision that plaintiff was not without fault in receiving the overpayment because he "knew or should have known that he was not entitled to receive benefits while incarcerated." (AR 16.) Accordingly, the ALJ correctly found that plaintiff's overpayment could not be waived.

2. Substantial Evidence Supported the Determination That Overpayment Would Not be Against Equity and Good Conscience

Although this Court need not review the remaining requirement given that there is no basis to disturb the Commissioner's finding regarding fault, the Court, in an abundance of caution, has analyzed this requirement and concludes that the determination that recovery of the overpayment would not be against equity and good conscience also is supported by substantial evidence in the record. Plaintiff contends that the recovery of the overpayment would be against equity and good conscience because the SSA "conveniently waited for a year" until plaintiff's release from prison to inform him that they had not made a determination on his request for a waiver and that they were "unilaterally deducting" his payments "without any *due process* whatsoever." (Plaintiff's "Response to Defendant's Memorandum of Law" at 3 (emphasis in original).) Plaintiff argues that

he met the criteria for a full waiver when he initially submitted a Request for Waiver Form on July 31, 2006, but, by the time the SSA reviewed plaintiff's Request for a Waiver in December 2007, plaintiff was ineligible for a waiver.

Plaintiff fails to provide an argument under the applicable statute for why recovery of the overpayment is against equity and good conscience. Under 20 C.F.R. § 404.509(a)(1), recovery of an overpayment can be "against equity and good conscience" where an individual demonstrates that he "changed his or her position for the worse" or "relinquished a valuable right . . . because of reliance upon a notice that a payment would be made or because of the overpayment itself." *Id.* The plaintiff has not alleged that he changed his position or relinquished any valuable rights as a consequence of the overpayment. Nor has the plaintiff satisfied any of the criteria set forth in 20 C.F.R. §§ 404.510(a), (b), and (c) or 404.510a. *See supra* n.6.

Accordingly, there is substantial evidence to support the ALJ's finding that plaintiff did not demonstrate that adjustment or recovery of the overpayment would be against equity and good conscience.[9]

---

[9] Although the ALJ did not make any findings as to whether recovery of the overpayment would defeat the purpose of Title II by depriving plaintiff of substantially all of his current income required for "ordinary and necessary living expenses," 20 C.F.R. § 404.508, the Court finds that there is substantial evidence to support a determination that recovery of the overpayment would not defeat the purpose of Title II. Plaintiff testified that he has a Master's Degree in Public Administration. (AR 163.) He is employed by the Metro North Railroad as a contract administrator, where he earns $800 per week in "[t]ake home" pay. (AR 165.) Plaintiff has approximately $10,000 in savings, and does not own any certificates of deposits or stocks. (AR 170, 172.)

As noted *supra*, ordinary and necessary expenses include fixed living expenses, such as food, clothing, rent, mortgage payments, utilities, maintenance,

## III. CONCLUSION

For the foregoing reasons, this Court grants defendant judgment on the pleadings and affirms the decision of the ALJ. Plaintiff's cross-motion is denied. The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Date:   March 9, 2012
        Central Islip, NY

---

insurance, taxes and installment payments. 20 C.F.R. § 404.508(a)(1). Other ordinary and necessary expenses include medical bills, hospitalizations, expenses for the support of others for whom the individual is legally responsible, and other miscellaneous expenses which may reasonably be considered as part of the individual's standard of living. 20 C.F.R. § 404.508(a)(2)-(4). Plaintiff pays $800 per month in rent to live in his mother's house, where he receives a room, meals, access to laundry facilities, and utilities. (AR 170-71.) He does not have a cell phone or a car. (AR 171.) Plaintiff's medical insurance, retirement benefits, and $15 per week for a fitness club membership are withdrawn from his salary, and thus his $800 take-home pay appears already to exclude these expenses. (AR 171-72.) Plaintiff pays approximately $4 per day for transportation. (AR 172.)

On October 11, 2007, the SSA informed plaintiff that it would withhold $100.00 from his monthly benefits to recover the overpayment. (AR 39.) Plaintiff's monthly income is approximately $3,200, and his expenses are approximately $920 per month, leaving plaintiff with approximately $2,280 per month in disposable income. Thus, requiring the plaintiff to pay $100 per month to recover the overpayment would certainly not defeat the purpose of Title II by depriving plaintiff of substantially all of his current income required for "ordinary and necessary living expenses." 20 C.F.R. § 404.508. Indeed, it appears from the record that plaintiff could afford to pay significantly more than $100 per month to refund the overpayment.

* * *

Petitioner is *pro* se, Patrick R. Adams, 840 North William Street, Baldwin, NY 11510. The attorney for defendant is Loretta E. Lynch, United States Attorney, Eastern District of New York, by Arthur Swerdloff, 271 Cadman Plaza East, 7th Floor, Brooklyn, NY 11201.